We'll move to the second case this morning, which is Nelson v. City of Chicago. May it please the Court, I'm Irene Dimcard. I represent Larry Nelson. On February 11, 2008, Larry Nelson pulled out of a gas station. Defendant police officers immediately pulled him over, put a gun to his face, said, we're going to blast your ass, barked out conflicting orders, move, don't move, handcuffed him, searched his car, detained him for 25 to 30 minutes. Now, our first claim here is that it was error to allow Officer Novotny to speculate as to why defendants might have pulled a gun on plain, might have stopped him, might have detained him, might have cuffed him, might have searched his vehicle. There were judicial admissions here. There were responses to requests to admit. And the defendants admitted they had no recollection of any facts that might constitute reasonable suspicion or probable cause sufficient to stop or arrest Larry Nelson. They also admitted that there was no information obtained by Chicago police officers on computer databases that gave them probable cause to arrest him. Now, at trial, they continued having no recollection of the event. And I asked them specifically, I said, do you deny that you were at North Pulaski and West Iowa on the date and time of question? They said no. Do you deny that you stopped him? No. Do you deny you cuffed him, detained him, searched his vehicle? They didn't deny any of it. They offered no justification whatsoever at trial for their actions in seizing and searching the plaintiff. Now, at the pretrial conference, the defense attorney said, I want to bring in testimony as to what the officers might have done, what might have happened here. And the judge said, well, I think it's fair for you to bring in ordinary practices and procedures. And so at trial, the defense attorneys asked, what are the circumstances in which you would pull a gun and you would point a gun at someone? And so all this testimony came in about all these hypothetical situations where they could have gotten a computer communication, that someone was armed and dangerous, known to fight with the police, there might have been furtive movements, my safety might have been in jeopardy, there might have been knives, there might have been guns, all facts that had nothing to do with Larry Nelson. And it was prejudicial for the jury to hear about this. Is there any regulation or directive that requires that a record be kept by an officer if he does draw his service revolver in an encounter with a citizen? There is no directive. There is a directive that if they have a contact with a person, they're supposed to fill out a contact card. And they didn't do that. But apparently we do know that there was some kind of contact because they ran his ID, didn't they? We found out about that. We were able to trace that later. In fact, we got 51 pages of computer printouts of people they had stopped that day. And that gets in later when I talk about the Galinda issue. But yeah, they stopped people all day. They stopped dozens of people all day, no contact cards, never called the dispatcher. There's no record at all of this happening. These guys are just kind of a roving band that goes around the community doing this. Isn't that right? They don't answer calls. Well, they stop people whenever they want to, and there's no accountability because there's no record of it. And this is in the regular course. They do this dozens of times. At least on this particular day, they did it dozens of times. And we were able to show that in the computer. And these were four officers, two different units, right? Two different cars, yes. How many officers? Four officers in two different cars. And we have institutional amnesia here. Right. And so the judge said, gave a jury instruction, that these Novotny statements were general background information that are not intended to convey what actually happened that night. Well, there are problems with both of those. First of all, this is not background information. The defendants cite the Whitehead case, where this court held that when Mrs. Whitehead came to the scene, you could bring in what happened to the son before she got there. But what was testified to with these guns and knives and people that are armed and dangerous, known to fight with the police, that never happened in Larry Nelson's case. It's not clear to me what theory of relevance this background information idea relates to. I mean, if it's background to what? If it's not an invitation to the jury to infer that one of those background things happened in this case, then why is it in? Exactly. That's our point. It's not relevant. It's not relevant for any of that to come in. And we objected to it, and we predicted that this was going to happen because it was very clear the defense attorney was going to be trying to do this because he was very unhappy with these judicial admissions. Well, it's my understanding that one of the judicial admissions was that the LEADS system turned up no probable cause and also none of the warnings that Novotny testified about that would cause an officer to draw his service weapon.  There was nothing there, so the quote-unquote background testimony was contradicted by hard evidence. Right. That's exactly our point. There was no reason to bring in all these hypothetical situations, these horrible things that do happen to police officers but didn't happen in this particular case. The other thing that the defense is saying is that this was habit testimony, and the judge said, well, the habit testimony is, of course, evidence of habit that may be admitted to prove on a particular occasion a person acted in accordance with a habit or a routine practice. But this kind of situation is not habit. You've got responses to extraordinary circumstances, dangerous circumstances. There have to be quick, split-second responses to the unpredictable circumstances. This is not routine. This is not habit. Well, you can't prove probable cause by habit. I have a habit of only arresting people based on probable cause. That doesn't make any sense. But the other thing that doesn't make any sense is that the judge instructed the jury that this was general background information not intended to convey what actually happened on date in question. When you have habit, it is supposed to be predicting what happened on the date in question. So we think the verdict was swayed by this error, and the defense planted seeds of doubt as to what really happened, making up all these scenarios for which there wasn't even an iota of proof, and the speculation shouldn't have been allowed. Our second point is that prior arrests came in. My client had been arrested. He had eight misdemeanor arrests and one felony arrest from 1983 to 1999. They were all dismissed. There was one that went to trial. The felony went to trial. He was found not guilty. And the judge ruled before trial that we had two motions, a motion eliminated and then I renewed the motion. The judge said, if he says he's never had an encounter with the police, and she said something like, if he says I've never seen a badge, never seen a police car, I don't know anything about the police, then you can impeach him with testimony that he'd been arrested before. And that's what we had going into the trial. And so at trial, the testimony is very circumscribed. Plaintiff testified that he was frightened that Officer Ruzak put a gun in his face and said, don't move or I'll blast your ass. He feared for his life. All the testimony was in the moment as to what was happening then, and it was humiliating for that to happen to him. There was a sidebar after plaintiff testified, and defendant said, hey, he's opened the door. And the judge ruled that because this was a terrifying situation, other episodes that were also terrifying could come in. And I argued, well, we limited it. We limited it to this event, those officers, that gun. And so how did we even open the door? And so the question that came out from the defense attorney, isn't it true that you've been arrested on numerous occasions? And the damage was done. I tried to rehabilitate that this was a long time ago. These weren't convictions. No one put a gun to his face in these other times. But this was not intended by the defense attorney to rebut damages. It was intended to impugn plaintiff's character and credibility. How do you know that? Because they laid no foundation. They did not ask questions about his emotional distress. Is your emotional distress, did it come from any other events other than the one that you're talking about today? It was almost like immediately the answer was, isn't it true you've been arrested on numerous occasions? And that there's no authority for this. Rule 609 concerns convictions. 608 is when there's bad acts probative of a witness character for truthfulness. Defendants try to apply Rule 404B, motive, opportunity, intent, the litany that is under 404B, but they don't develop the argument. What were the grounds that you were able to bring in these false arrests? This case is directly on point with Barber that was decided by this case. In that case there were two officers, and the plaintiff said he was afraid of those two officers, not police in general. He didn't claim a generally disabling long-term trauma, as here, and this court made a point of saying there's a difference between being arrested with excessive force and without excessive force. And Larry Nelson was very clear, that gun scared the hell out of me. And he was very, very graphic as to how scared he was. Did he give any indication of having a long-term fear of police because of these prior arrests? No. He said he was humiliated. We deliberately focused on that day. How did you feel that day? And he didn't say, I hate police. In fact, he was a ward committeeman. Was the jury given any information as to the nature of the earlier arrests or any of the surrounding facts concerning those arrests? No. So they really had nothing to compare in terms of the circumstances around those arrests, whether they would have elicited a terror of police officers or not, as compared to the plaintiff's testimony with respect to the current situation. That's why I say it was to impugn his character, was haven't you been arrested numerous times? And that was the question that came up. So in other words, you think they were trying to show the plaintiff was an old salt at dealing with police officers in confrontational situations. And so this really didn't unruffle him very much, to have a gun put in his head. Well, that would have been if they were trying to show that it had something to do with damages. But they weren't. They were trying to show that he was just a bad character, that he had been arrested before. I understand. Their view is that that's what they were trying to show. Is that right? The defendants, their view is that they were trying to show that he wasn't traumatized terribly much by this affair because of his earlier affairs. That's what they told the judge, but that's not how they questioned the plaintiff. They didn't question the plaintiff. That's my point. That's what I'm trying to get at. They didn't admit any evidence with respect to those earlier arrests that would have allowed the trier of fact to say, well, yes, maybe he wasn't all salt at this because he had this experience earlier. That's right. Similar experiences earlier. They said nothing about the type of earlier experiences. Right, right. It just was number of arrests and numerous arrests that he was asked about. How many arrests were there? Pardon me? There were eight misdemeanor arrests and one felony arrest. The felony case had gone to trial and he was found not guilty. He had no convictions at all. I'm getting into rebuttal time, but I do want to touch on some of the other issues. A related issue is they brought in other civil rights lawsuits. At the time, the plaintiff had two lawsuits. One, the city had settled, and another one was taken to trial subsequent to this case, and the plaintiff won and got compensatory and punitive damages from the jury. The ruling of the court was, unless you open the door, these other lawsuits aren't coming in. Now, at trial, there was a plaintiff who didn't open the door, but the defendant said that because Plante testified, a gun was pointed at him and it was traumatizing, that opened the door to other lawsuits coming in. And we argued, you know, that doesn't make any sense, but the ruling was from the court, this episode generated a great fear in his heart and so the other complaints could come in. And then this was like gangbusters. This was like the first question the defense attorney asked him. Three questions. Isn't it true, Mr. Nelson, that this is not your first lawsuit against Chicago police, number two? And in all these cases you allege the police did things that were wrong to you. Number three, wasn't Irene Dimkar your attorney in these other lawsuits? That's got nothing to do with being traumatized by their events. The reasons he gave the judge to use these other lawsuits, that there were confusing facts. We said the facts aren't confusing. In one case there's a traffic stop, in the other case there wasn't a traffic stop. One case there was a gun, in the other case there wasn't a gun. In one case there was injury, in the other case there wasn't injury. So we asked the judge... You know, you're eating up your rebuttal time. I know I am. I know I am, so I guess I will save some for later. There are other issues, but I wanted to hit some of the major ones. Thank you. Thank you. Ms. Hornstra. Good morning, Your Honors. May it please the Court. Mr. Nelson's counsel, having combed the trial record for any hint of error,  based on a number of the district court's evidentiary rulings and instructions to the jury. Now, some of these issues are waived, plainly waived. Some were not error in any event, and none deprived Mr. Nelson of a full and fair opportunity to try his claims to the jury. District courts are afforded wide discretion to make decisions in conducting trials, and a party is not entitled to a do-over just because, in retrospect, it's possible to question some of the rulings made along the way. Well, this is not just hindsight analysis. I mean, there were objections all along the way, and this was a very hard-fought trial, and these evidentiary rulings that were made both before trial and then revised on the fly during trial were hotly contested. So for the most part, I don't think we have waiver. The jury instruction is a different issue, but with respect to the evidentiary ruling, I don't think we have any waiver issues. This was very hard-fought both beforehand, and the parameters of the evidence were argued before the trial began, and then the ground shifted as the trial was underway, and objections were lodged and made and overruled. What concerns me here are the prior arrests, the prior lawsuits, and the so-called background testimony. You've got to articulate some theory of admissibility for all three of those. Yeah, I'd be happy to address those, because those were the issues that were addressed in Ms. Dimkar's opening. I will say on waiver, just briefly, we'll stand on our briefs, but the thing about the Galindo testimony and the harm instruction were very clearly waived, and we set that out in our brief, and it wasn't raised in the open court session. The other three categories of evidentiary error, those are preserved properly before us. So what's your theory of admissibility for those three categories of evidence? Well, I'll start, if it's okay, with Officer Novotny's testimony, which is where Ms. Dimkar started, which was the background information about, you know, what these officers sometimes do in traffic stops. Ms. Dimkar badly mischaracterizes what Officer Novotny's testimony was. He was notóhe was very clear that he was not speculating about what might have happened in an encounter with Mr. Nelson. Well, then what's the point of the evidence? It was useful to put in context that the officers didn't recallóyou know, I mean, what they wereówhat Mr. Nelson alleged was, you know, fairly extreme conduct. And, you know, theyótheir testimony was they didn't recall any interaction with him, so they couldn't specifically deny that they had, you know, pulled a gunó Right. We know that. So what is the point of putting in the background, if not to allow the jury or at least encourage the jury to draw an inference that one of these background things happened here? It may have been, without that context about what they do in their ordinary course of business, somewhat difficult to imagine how the officers couldn't remember an encounter, you know, where they pulled a gun on somebodyó Now, how did any of that background evidence explain their lack of memory?  No, it was that theyóbecause of the nature of the work they do, it is not an extraordinary event, you know, to conduct searches, to be in a situation where, because they fear for officer safety, they have to take measures such as drawing their weapons. Right, but that's not why you were asking for it to be admitted or why the court admitted it, to explain why they didn't remember that there was nothing extraordinary going on here. I mean, it was not clear what the background was for. What proposition were you trying to prove? That, to me, I think is the relevance of that evidence. Background for background's sake. Correct. And if, I mean, if it was only marginally relevant, it wasó I'm asking how it was relevant at all. What proposition were you trying to prove? It was useful to explain the officer's lack of recollection. But that's not why it was admitted, and that's not how you used it. The district court said it was for background, you know, it was general background purposes. That is meaningless, counsel. That doesn't have any content to it. As an evidentiary ruling. I guess I'mó Okay, you don't have an answer to that. Let's go to the arrests. Okay. Well, actually, I would like to say something more about Officer Novotny's testimony, which is what it isn't. It was very clearlyóI mean, even if its relevance was marginal or it shouldn't have been admitted because it wasn't useful, it was not unfairly prejudicial because Officer Novotny could not have been clearer that he was just giving background information. This portion of his testimony was set off from the part where he was, you know, talking about what happened on the evening of the encounter with Mr. Nelson. Did Officer Novotny indicate in this general background information how many times in the course of one tour he might draw his weapon? Yeah, I think he said, you know, he couldn't sayóyou know, couldn't give sort of an average, but we do know from other evidence that, you know, they, I think, conducted 40óthese officers conducted 40 stops during that evening. How many times did they draw a weapon? He didn't recall anything. I mean, he didn't haveó And he has to make no report of such an encounter where he draws a weapon? Under CPD directives, we don't dispute that this kind of encounter should have been documented. In factó So he doesn'tóhe can't remember, he doesn't document it, but he wants to tell the jury what, in his mind, he usually does. Right. That's basically the situation we have in front of us. Yeah, and we don't dispute that these officers should have been keeping records of these encounters, but it's not the tactics that they employed that are at issue on the appeal. It's whether Mr. Nelson had a fair trial and was able to present his claims to the jury. And theóI mean, it's true there's a lack of record-keeping. He doesn't recall how many times he pulled his weapons, but these officers generally, the type of work they did, it wasn't an extraordinary event for them to, you know, take these sorts of measures. But he was extremely clearó How do we know that? Wható How do we know that, to take these extraordinaryó it is an extraordinary measure to take your service revolver out of its holster and put it at someone's head. It is. That is. And Officer Ruzak, who was the officer Mr. Nelson said did that, denied that he behaved in the way Mr. Nelson said. So there weó He denied it? I thought he didn't remember. He didn't recall whether he had drawn his weapon, but he denied that he, you knowó Mr. Nelson said he pointed his gun at him and said, I'll blast your ass at least three times, and Officer Ruzak emphatically denied that anything of the sort happened. And there were otheró You know, in some specific respects the officers, you know, disputed Nelson's account just because the thing he was explaining was something that's never happened. So there were disputes about that, but there was, you know, general lack of recollection. Anyhow, I just think it was very clearó He was very clear that he wasn't talking about what happened with Nelson. The court gave a limiting instruction, and so even if the background information shouldn't have been admitted, it was at worst harmless error. On the question of the arrests, the evidence that was admitted that was allowed in was very limited. It's true defense counsel questioned Mr. Nelson about arrests, but all he said in response was that he had been arrested in the past, and on redirect he came out that this was a long time ago. You know, for all the jury knew, it happened when he was a teenager, and he said he'd never been connected. So the only fact that came out was the fact that he had been arrested. Numerous times? That was the question, but there was noó The number of his arrests, which were numerous, weren't brought out, and the reasons for the arrests weren't brought out. It was the mere fact that he had been arrested. What's the theory of admissibility on this evidence? Well, the damages testimony that Mr. Nelson gave was not nearly as limited as Ms. Dimkar suggests now. I mean, she certainly did try, as she said, to focus on that one day and the impact of having a gun pointed in Mr. Nelson's head, but he repeatedly talked about how embarrassing it was and how humiliating the encounter was, and brought into thatóit was particularly embarrassing and humiliating in light of his status as a community member, somebody who works with the police, somebody who has good relationships with the police, and the district court observed tható the district court tried to limit that sort of evidence, but realized that there had been a surprising amount of testimony to bolster his character as an upstanding member ofó and so that was part of the district court's rationale. Well, the arrest information specifically cannot come in on a character rationale. That's very clear. That's correct, but the basis for admitting it was related to the damages of his emotional distress asó But he never claimed a generalized, ongoing, disabling fear of the police as a result of this incident, and he never claimed that he had not ever had a negative encounter with the police, or he never claimed that he had never had any encounter with the police before. Well, but he alsoóI mean, he claimed that he was humiliated and embarrassed and that was well beyond the sort of specific nature of this. If he had beenó No, it was actually very tightly connected to this incident. But if he had had other encounters with police, the jury could infer that some of his reactionsó Actually, Barber says specifically no. BarberóI don't agree with that reading of Barber. Barber says that in that case, the arrest that was inadmissible wasó what was brought out was the fact that the arrest was for the sort of conduct that the officers in Barber, for the incident in that case, claimed that the plaintiff was engaging in. They had different versions. Officers in Barber said this kid was drinking, he was drunk, and he had been arrested on a prior occasion for underage drinking, and the testimony was admitted to impeach his testimony that he didn't drink. Right, and we said that the admission of that evidence was erroneous. It was an abuse of discretion both on an impeachment theory, certainly on a character theory, and also on a damages theory. We said it was erroneously admitted on all three theories. I don't know what leg you have to stand on here, on the arrests or the prior lawsuit for that reason, because if the arrests are out, the prior lawsuits are too. Well, the testimony was it was not relevant for the purpose it was admitted, which was to impeach the plaintiff's testimony that he wasn't drinking at the time of the incident. That's because the fact that he was arrested for something on a prior occasion doesn't mean that he was guilty of it, and the fact that he did it on one occasion didn't mean that he was doing it on another occasion. So it wasn't relevant for what it was admitted for. Here, it was admitted to go to damages, and this Court's decision in Sanchez holds, you know, stated that it's at least arguable that prior arrests could... Right, and Barber said, building on Sanchez, that to admit them on a damages theory is also improper, arrests or convictions. I'm sorry, please answer the judge's question. In Barber, if I recall the decision correctly, in Barber what the Court held was not relevant on damages was evidence of a conviction that occurred after. Well, right, if a conviction is not relevant, certainly an arrest is not. Well, the conviction in that case happened after the incident, and I don't know that the Court said it had no relevance, but it was certainly outweighed by the danger of unfair prejudice. Did the District Court ever show an awareness of our decision in Barber? You know, actually, I think Barber was in... This case was tried in 2010, so it predated both Barber and Sanchez. So you didn't have them. That's correct. Why didn't you lay a foundation, if you were using this to try to show that there was no harm, and to mitigate or to show there were no damages, why didn't you admit some evidence with respect to the nature of the earlier arrests? I mean, as far as the jury knew, the other arrests were that he walked in and self-surrendered. I mean, there's nothing in the record. I'm sorry, Your Honor, I can't speak to that. We had another counsel trying the case. Yeah, I know. I mean, I realize we're all one. That's part of your problem and maybe part of the problem in the case, that this was a fairly aggressive defense. It wasn't a good way. I would agree. It wasn't an effective way, I think. More sound and light in the city's presentation at the trial level. Right. But with the background, the damages information that it was introduced to rebut was there. It was properly admitted for that purpose. And it was least arguable enough to be within the court's discretion. The lawsuits? Both the arrests and the lawsuits. What possible relevance do the lawsuits have? The lawsuits can be seen as quite a bit more relevant than the arrests because the lawsuits are Mr. Nelson's own word that he's had other encounters with the police that damaged him, that he suffered injury from. And the jury could infer that as far as Mr. Nelson's emotional response. Without having any information about them? What they did have. Was that at stake in the lawsuit? Other than without that information, it's just lawsuits that show that he's a litigious person. No, in fact. And, therefore, shouldn't win in this case. In fact, Mr. Nelson testified about the suit that was pending at the time and said that he filed it because the police grabbed me and injured me in front of a lot of witnesses. And, again, part of his theory of emotional damages in this case was sort of embarrassment and humiliation that he had some status in the community and wasn't somebody he thought this would happen to. It was embarrassing. In fact, he was claiming the same sort of emotional injuries in another case. Or he was claiming at least he was injured in front of people. That was a component of it. And so the jury could infer that some of his emotional damages that he was claiming were attributable to having them. Given that information, though, you weren't proposing to put in all the facts and circumstances underlying the prior lawsuits. You just wanted to ask about lawsuits. No, but it was that he claimed to have been injured by Chicago police. Right, but you didn't put any of that detail. You've sued the city a whole lot of times before. It was you've claimed to be injured by Chicago police. And, again, here he was claiming injury. And if injury was attributable to some other incident not involving these officers, then they should be liable for it. Right, but you didn't want to put in the details of any of the prior incidents to show that his emotional distress actually stemmed from those other incidents and not this one. All you wanted before the jury was the fact that he sued the city on account of encounters with the police on a variety of prior occasions, and so he was a litigious fellow. Well, I can't speak to intent, but I suspect that had to be. That's how it was used. I'm not questioning motives or what was in the mind of the person who actually tried this case from your office. But how it was actually used, insofar as the record reveals, is simply to show that he was a litigious guy. I don't agree. The questions were put in terms of you claim that you've been injured by Chicago police on other occasions, that you've claimed this injury and he was claiming emotional injuries in this case. And as far as whether defense counsel would have wanted to go into the details, I suspect that plaintiff's counsel would have resisted that. The court may not have allowed it. But there were some details, and what came out about the lawsuits was, if anything, more prejudicial to the defendants because you had him describing bad behavior injuring him by Chicago police officers, as well as, in the other lawsuit, a substantial settlement that he was paid. And even he got out, although there was an objection that the city made an admission of wrongdoing there. I see my time has expired. On other issues, we'll stand on our briefs, and we would ask that the judgment be affirmed. Thank you. Ms. Dimkar, do you have much time? I know I don't have much time left, so I'm going to make a couple quick points. First of all, it's important for the court to focus on the attorney conduct in this case, the defense attorney conduct not being proper. There was no foundation laid because that was a strategy. Ask the question before they can object. Get it out there. And over and over again, there was an attempt to dirty the plaintiff, to make him not look good, to impugn his character. I didn't get to talk about the Galindo testimony, but that was blatant where the attorney put forth false testimony. He went to page 12 of a 51-page document and his question was, doesn't it say here that his vehicle registration was expired? And that wasn't true, and we spent hours afterwards trying to show that that was not true. And so that – and I don't think that the defendants on the field do not defend our contention that the defense counsel fraudulently put forth false testimony. The other point I want to make is what's very important about this case are judicial admissions. Do they mean something or don't they mean something? When somebody responds to a request to admit, it's supposed to be conclusive, it matters and aren't supposed to be controverted, and you can't admit a total lack of memory and recall and then make stuff up. So the judicial admissions, I think, are very important, and I just wanted to make that point. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.